**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SERVICE EMPLOYEES INTERNATIONAL UNION HEALTHCARE PENNSYLVANIA, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CIVIL ACTION NO. _____ |
| COUNTY OF CAMBRIA, GRANE HEALTHCARE CO., EBENSBURG CARE CENTER, LLC, d/b/a Cambria Care Center, and EBENSBURG ASSOCIATES, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | JURY TRIAL DEMANDED |

**COMPLAINT**

Plaintiff, by and through their undersigned counsel Claudia Davidson, Esquire, as and for

its complaint against the Defendants, alleges as follows:

**NATURE OF THE ACTION**

This is an action to establish and enforce certain contractual rights of the Plaintiff,

Service Employees International Union Healthcare Pennsylvania ("the Union"), on behalf of

certain of its members, arising out of the 2009 sale by the County of Cambria ("the County") of

its Laurel Crest Rehabilitation & Care Center ("the Facility"), a nursing and rehabilitation

facility, to a business enterprise consisting of Grane Healthcare Co., Ebensburg Care Center,

LLC, and Ebensburg Associates, LLC ("Grane" or "the Grane Defendants"). The Grane

Defendants agreed to be bound to a collective bargaining agreement with the Union by agreeing

in that sales transaction to recognize the Union, which then represented a bargaining unit of

certain nursing employees, and to honor certain terms and conditions of employment contained

in a Memorandum of Understanding to which the Union and the County were signatory for

several preceding years. Grane has refused to abide by this collective bargaining agreement.

Additionally, the Union, on behalf of its members, is a third-party beneficiary to the agreement

between the County and Grane with regard to certain terms and obligations arising out of this

sales transaction. Both the County and Grane refuse to honor the Union's third-party beneficiary

status and its derivative rights resulting from this transaction.

## JURISDICTION

1.      Count I arises under the Labor-Management Relations Act of 1947, as amended,

29 U.S.C. §§ 141-197. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. §

185(c), as well as federal common law.

2.      Count II arises under the common law of the Commonwealth of Pennsylvania.

This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) because the claims

contained therein are related to the claims within the Court's original jurisdiction such that they

form part of the same case or controversy.

## VENUE

3.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)-(c) because all

defendants reside in the Western District of Pennsylvania and a substantial portion of the events

or omissions giving rise to the claim occurred therein.

## PARTIES

4.      Plaintiff, Service Employees International Union Healthcare Pennsylvania, CTW,

CLC ("SEIU Healthcare" or "the Union"), is a labor organization representing employees in an

industry affecting commerce as defined in 29 U.S.C. § 152(5), with a headquarters at 1500 North

Second Street, Harrisburg, PA 17102 and offices at 209 Ninth Street, Fourth Floor, Pittsburgh,

PA 15222. SEIU Healthcare was formerly known as Service Employees International Union, District 1199P, CTW, CLC. The Union has represented, since at least 1986, employees employed in numerous medical care facilities, in both the private and public sectors.

5.      The Union has an associational right to bring this action on behalf of its members as the individuals have the right to sue in their own right, the interests being protected are germane to the purposes of the Union and neither the relief requested nor the claims asserted require the participation of the individual members.

6.      The Union is acting in its representative capacity and its members have a real and substantial interest in this action.

7.      Defendant County of Cambria ("Cambria County" or "the County") is a fourth-class county and political subdivision of the Commonwealth of Pennsylvania with offices at Cambria County Courthouse, 200 South Center Street, Ebensburg, PA 15931.

8.      Defendant Grane Healthcare Co. ("Grane Healthcare") is a Pennsylvania corporation with a principal place of business at 209 Sigma Drive, Pittsburgh, PA 15238, and an additional place of business at Cambria Care Center, 429 Manor Drive, Ebensburg, PA 15931. It is one of several interrelated and affiliated entities which comprise the Grane corporate family/business enterprise.

9.      Defendant Ebensburg Care Center, LLC, d/b/a Cambria Care Center ("Ebensburg Care Center"), is a Pennsylvania limited liability company with a principal place of business at 209 Sigma Drive, Pittsburgh, PA 15238, and an additional place of business at Cambria Care Center, 429 Manor Drive, Ebensburg, PA 15931. It is one of several interrelated and affiliated entities which comprise the Grane corporate family/business enterprise.

10.     Defendant Ebensburg Associates, LLC ("Ebensburg Associates"), is a

Pennsylvania limited liability company with a principal place of business at 209 Sigma Drive,

Pittsburgh, PA 15238, and an additional place of business at Cambria Care Center, 429 Manor

Drive, Ebensburg, PA 15931. It is one of several interrelated and affiliated entities which

comprise the Grane corporate family/business enterprise.

11.     At all times relevant herein, Defendants Grane Healthcare, Ebensburg Care

Center and Ebensburg Associates (collectively, "the Grane Defendants" or "Grane") were

intimately related through common ownership, management, financial integration and control.

All of the Grane Defendants are also agents of each other for all purposes related to the purchase

and continued operation of the Facility including, but not limited, to:

(a)     Ebensburg Care Center and Ebensburg Associates are owned by the same

two members: Grane Associates (99.5 percent ownership) and Trebro, Inc. (0.5 percent).

Grane Associates is owned by four individuals; those four individuals also own Grane

Healthcare, among other entities.

(b)     Grane Healthcare Co., which was responsible for all employee-related

decisions associated with the sales transaction, has managed the operations of the Grane

Defendants' nursing facilities, including the facility now known as Cambria Care Center,

formerly the Laurel Crest Rehabilitation and Care Center, previously owned by the

County. Ebensburg Associates owns the facility; Ebensburg Care Center leases that

facility from Ebensburg Associates.

12.     At all times relevant hereto, Grane was an employer in an industry affecting

commerce within the meaning of 29 U.S.C. § 152(2) and was signatory, either directly or as

4

agents or single/joint/common employers, to several agreements with the County with regard to

the sale of this facility and the employment of the Union's members.

## FACTUAL ALLEGATIONS

13.     Cambria County was the state-licensed operator of the Facility, a 370-bed nursing

home in Upper Yoder Township near Ebensburg, Pennsylvania.

14.     As operator of the Facility, Cambria County recognized SEIU Healthcare as the

exclusive representative of a bargaining unit of certain employees employed there. This

bargaining unit, consisting of certain full-time and regular part-time staff registered nurses and

licensed practical nurses, was certified by the Pennsylvania Labor Relations Board on January 3,

1986. During 2009, there were fifty-one (51) employees in this unit working at the Facility.

15.     Cambria County entered a series of Memoranda of Understanding ("MOUs")

with the Union setting forth bargaining unit members' wages, hours and other terms and

conditions of employment. The most recent MOU, covering the period of January 1, 2007, to

December 31, 2009, is attached to this Complaint marked as Exhibit A and incorporated herein.

16.     In 2003, Cambria County contracted to sell the Facility to a private health system.

Litigation was brought to challenge this transaction, and it was never consummated. Grane and

the County negotiated the terms of that sale, but it was not consummated at that time.

17.     Appendix C of the 2007-2009 MOU between the County and the Union, entitled

"Memorandum of Understanding Successorship Sale Transfer of Operations," provides in full as

follows:

> During the term of this Memorandum, should the County lease, sell,
> including a sale of assets only, transfer or privatize the Laurel Crest
> Rehabilitation and Special Care Center, the successor shall agree to recognize the
> Union and accept their Memorandum of Understanding. The County will place
> any prospective buyer, lessee, successor or purchaser on notice of this
> requirement and will obtain a signed document reflecting acknowledgment and

acceptance of this obligation before a sale, privatization or transfer or any legal
action affecting the employees is undertaken. A copy of all documents shall be
sent to the Union in a timely manner.

18.     In late June 2009, the County, through its elected Board of Commissioners ("the

Commissioners"), publicly announced that it would either close or sell the Facility by the end of

that year. The Commissioners and other County officials met with Union representatives on a

number of occasions to discuss the County's plans for the Facility. The County, through its

representatives, indicated that as a condition of any sale, the buyer would be required to

recognize the Union, employ all of its members who wanted to work at the Facility and

undertake the obligations of the MOU, as the successor employer, all of which was required by

the MOU.

19.     The County conducted a bidding process, and on September 11, 2009, the County

and Grane entered into an agreement to transfer ownership and operations of the Facility from

the County to Grane to be effective at 12:01 a.m. January 1, 2010.

20.     Upon information and belief, the County and Grane conducted extensive

negotiations prior to the execution of the documents which encompassed the sale and transfer of

ownership and operations of the Facility from the County to Grane.

21.     The County and Grane executed an Asset Purchase Agreement ("APA") dated

September 11, 2009, attached hereto marked as Exhibit B and incorporated herein.

(a)     Section 4.7 of the APA, titled "Contracts," includes a subsection

providing, in full, as follows:

> (b)     Seller and Service Employees International Union District
> 1199P, CTW, CLC, are parties to a Memorandum of Understanding,
> ("MOU"). Pursuant to this MOU, Appendix C, Memorandum of
> Understanding Successorship Sale Transfer of Operations, during the term
> of the MOU, "the successor shall agree to recognize the Union and accept
> their Memorandum of Understanding. The County will place any

prospective buyer…on notice of this requirement and will obtain a signed
document reflecting acknowledgement and acceptance of this obligation
before a sale, privatization…affecting the employees in [sic] undertaken."
Buyer agrees to execute a signed document reflecting acknowledgment
and acceptance of this obligation concurrent with the execution of this
Agreement. The MOU shall expire on December 31, 2009[.]

Ex. B at 15 (ellipses in original).

　　　　(b)　　　Section 9.1 of the APA, titled "Employees" (emphasis in original),

provides, in relevant part, as follows:

　　　　(a)　　　Seller will terminate all employees of Seller employed in
connection with the Facility on the Closing date, and Buyer agrees,
subject to verification that such employees may be legally employed in the
United States, to offer employment … to all employees of the Seller and
its affiliates employed to provide services at the Facility, except for those
employees listed on Schedule 9.1(a) attached hereto, immediately
thereafter at positions, salaries and wages substantially equivalent to the
position, salary and/or wage of each such employee while in the employ
of Seller. … Buyer shall have the opportunity to meet with all employees
of the Seller (the "Potential Employees") and Seller agrees that it will
assist Buyer as reasonably requested thereby in communicating any such
offers of employment to the Potential Employees and arranging for Buyer
to meet with such employees regarding the offers. The term "Employee"
as used in this Agreement shall mean all employees of Seller and its
affiliates who accept employment with Buyer. Potential Employees who
do not accept employment with Buyer will not become employees of
Buyer. Buyer covenants and agrees that it shall offer, as of the Closing
Date, terms and conditions of employment (including initial position, cash
compensation, shifts, benefits, including health, dental, disability, life
insurance and retirement plans) to the Employees at substantially
equivalent levels that Seller provides to such Employees immediately
before the Effective Time. Buyer agrees to honor each Employee's rights
in respect of PTO, sick leave and extended illness bank and to give each
Employee credit therefore, either by crediting such time off in the
employment records of Seller and/or any of Seller's affiliates immediately
prior to the Effective Time or by making full payments to such Employees
of the amounts within such Employees who have received had they taken
such time off. Buyer agrees to recognize the tenure of each Employee
while in the employ of Seller for purposes of determining benefits
available to each such Employee under Buyer's employee benefit plans
(which shall include a waiver of preexisting condition exclusions for
Employees and their dependents and recognition of or credit for all
deductibles paid by such Employee during the current period while in the

7

employ of Seller). As a successor, Buyer shall assume each collective bargaining agreement in effect at the Facility. Buyer shall meet its obligations as contained in Section 4.7 (b) and (c).

*Id*. at 28-29.[1]

(c)     At Section 11.16, the parties specifically provided that all of the

employees who continue to work at the Facility after the transfer of ownership are third-

party beneficiaries of the APA. *Id*. at 41.[2]

22.     The Union received another version of the APA from the County, also fully

executed and dated September 11, 2009. This version is attached hereto marked Exhibit C and

incorporated herein. The two versions differ in some respects, but both documents fully support

the claims encompassed herein. The schedules attached to both versions of the APA are

identical. They are attached hereto marked as Exhibit D and incorporated herein.

23.     Executed contemporaneously with the APA, and included in both versions, was

an agreement titled "Acknowledgment and Acceptance," attached hereto marked as Exhibit E

and incorporated herein. Paragraph 1 of the Acknowledgement and Acceptance repeated

verbatim the text of Section 4.7(b) of the APA, also the text of the successorship provision of the

MOU. *See* Paragraph 21(a), above.

24.     The Acknowledgment and Acceptance further provided as follows:

1.     Seller and Service Employees International Union, District 1199P, CTW, CLC, are parties to a Memorandum of Understanding ("MOU"). Pursuant to this MOU, Appendix C, Memorandum of Understanding Successorship Sale of Transfer of Operations, during the term of the MOU, "the successor shall agree to recognize the Union and accept their Memorandum of Understanding. The County will place any prospective buyer…on notice of this requirement and will obtain a signed documents reflecting acknowledgment and acceptance of this obligation before a sale, privatization affecting the employees in [sic] undertaken." Buyer agrees to execute a signed document reflecting

---

[1] Schedule 9.1(a), described in the APA as listing the County employees to whom Grane is not obligated to offer employment, contains no names.

[2] Page 41 is erroneously numbered as page 3 in this version of the APA.

acknowledgment and acceptance of this obligation concurrent with the execution
of this Agreement. The MOU shall expire on December 31, 2009.[3]

     2.    This Acknowledgement and Acceptance Form shall serve to
document Seller's obligation to place Buyer on notice of the requirements set
forth in Paragraph 1 above.

     3.    This Acknowledgement and Acceptance Form shall further serve
to document Buyer's acknowledgment and acceptance of the conditions set forth
in Paragraph 1, above.

(Ellipsis in original.)

25.    The Acknowledgement and Acceptance bound both the County and Grane to
certain legal obligations to the Union. It also created a contract/collective bargaining agreement
between the Union and Grane, as successor to the County, with certain terms and conditions of
employment, all of which are set forth in the MOU.

26.    Sometime after the County executed the APA and the Acknowledgment and
Acceptance Agreement, the Commissioners notified the Union that Grane would be purchasing
the assets of Laurel Crest and provided the Union with contact information for Grane.

27.    On numerous occasions after September 11, 2009, the Union tried to contact Len
Oddo, Chief Operating Officer of Grane Health Care Co., by telephone to discuss the Union's
representational status, but these calls were not returned.

28.    The Union made at least two demands on Grane to honor its contractual
obligations to commence bargaining with the Union, who would do so on behalf of the
employees. The first was on October 23, 2009, when Union representatives went to Grane
headquarters with a petition from the employees and the Union to seek a meeting with Oddo.
Despite being told that Oddo knew Union representatives were there to meet with him, he

[3] The entire text of this section of the MOU appears at Paragraph 17, above.

9

refused to do so. A promise that the Union representatives would receive a call from Oddo never materialized.

29.     The second occasion was by letter dated December 23, 2009 to Len Oddo, when the Union made a request to bargain a successor agreement. That letter is attached hereto as Exhibit F and incorporated herein. Grane did not respond until a January 11, 2010, letter from its counsel, who refused the request. That responding letter is attached hereto marked Exhibit G and incorporated herein.

30.     In the late fall of 2009, representatives of Grane came into the Facility and solicited applications for employment from the members of the bargaining unit while they were still working for the County. From approximately October 27 until October 30, 2009, Grane also required applicants to take and "pass" medical examinations, although no offers of employment had yet been made.

31.     On December 7, 2009, the County's Office of Human Resources sent all employees at the Facility a notice-of-layoff letter informing them, *inter alia*, that they would cease to be County employees as of 12:01 a.m. on January 1, 2010, when Grane Healthcare became the owner of the Facility.

32.     Grane did in fact become the owner and licensed operator of the Facility as of January 1, 2010, and continued to operate it without any interruption of the operation under the name Cambria Care Center.

33.     Grane has refused to recognize the Union, refused to bargain with the Union and refused to employ approximately seventeen (17) members of the Union formerly employed by the County who had applied for continued employment with Grane.

34.     Grane unilaterally altered many terms and conditions of employment of the

Facility's employees and Union members it did hire, thereby violating its obligation to maintain

the terms and conditions of employment specified in the Memorandum of Understanding, the

APA and the Acknowledgment and Acceptance Agreement. The terms and conditions altered by

Grane include wages, paid time off, medical benefits, retirement benefits and insurance benefits.

Grane also altered specific job duties and responsibilities.

35.     On or before February 1, 2010, Owen T. Larkin, Grane's Administrator of

Cambria Care Center, sent all Center employees a letter in which he wrote the following, *inter*

*alia*:

> Lately, there have been questions to me about the role of the unions here
> at Cambria Care Center. You should know that Cambria Care Center does not
> recognize the two unions from Laurel Crest. Therefore, Cambria care Center does
> not take out dues or fines that the unions may want you to pay.

## COUNT I:
## VIOLATION OF A CONTRACT
## BETWEEN AN EMPLOYER AND A LABOR ORGANIZATION

36.     The averments of Paragraphs 1 through 35 are incorporated herein by reference as

though set forth in full.

37.     A contract between Grane and the Unions came into existence when Grane

executed the Asset Purchase Agreement and the Acknowledgment and Acceptance Agreement in

which it obligated itself to employ, with specific terms, all of the Union's members who desired

to continue their employment at the Facility.

38.     The terms of such a contract were those contained in the MOU to which the

Union had already agreed to be bound based upon the successorship provision therein to which

Grane obligated itself by entering into the APA and the Acknowledgment and Acceptance. In

addition, the APA also sets forth certain terms and conditions of employment for the

11

employees/Union members who sought continued employment with Grane. *See* Exhibit B at 28-29, § 9.1.

39.     Grane and the Union are, and have been since September 11, 2009, parties to an implied-in-fact contract, as provided for by Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, federal labor common law and federal labor policy.

40.     Grane's unilateral changes in many terms and conditions of employment breached its contract with the Union.

WHEREFORE, Plaintiff respectfully requests that this Court:

(a)     Enter judgment declaring that the Union and Grane are parties to a collective bargaining agreement.

(b)     Order Grane to offer employment at the Facility to all those Union members who were not offered employment in December 2009.

(c)     Order Grane to pay such damages as are appropriate to the Union as well as to the employees for its breach of contract with the Union and the employees, including, but not limited to, compensatory damages equivalent to the difference in value between the wages and benefits provided by the County pursuant to the MOU and those unilaterally implemented by Grane, and compensatory damages in an amount equal to the wages and benefits that employees who were not hired would have received had they been hired in December 2009

(d)     Order Grane to comply, going forward, with the CBA.

(e)     Grant such other and further relief as the Court may deem just and proper.

**COUNT II:**
**BREACH OF CONTRACT INTENDED**
**FOR THE BENEFIT OF A THIRD PARTY**

41.     The averments of Paragraphs 1 through 40 are incorporated herein by reference as though set forth in full.

42.      All of the averments contained herein indicate that Grane promised the County that it would employ all those Union members who sought continued employment under the terms and conditions set forth in the APA and the Acknowledgment and Acceptance by which Grane stated its intent to give the benefit of continued employment to the Union members.

43.     The employees are third-party beneficiaries to the APA and the Acknowledgment and Acceptance Agreement in that the APA identifies the employees as third-party beneficiaries, *see* Ex. B § 11.16, and the terms of those two agreements state that Grane was obligated to employ all those Union members and former County employees who sought employment with Grane.

44.     The Union is a third-party beneficiary both in its capacity as bargaining unit representative of the employees and in its own right because Grane promised the County in the Acknowledgement and Acceptance to recognize the Union and accept its MOU with the County.

45.     Neither the County nor Grane are honoring their respective obligations under the APA and the Acknowledgment and Acceptance Agreement to which they are signatories.

46.     By letter dated March 31, 2010, the Union put the County on notice that Grane is not complying with either the APA or with the Acknowledgment and Acceptance Agreement and, on behalf of itself and the employees as third-party beneficiaries to those agreements, asked the County to seek enforcement of the terms of those agreements; it has refused to do so. The Union's letter is attached hereto marked Exhibit H and incorporated herein.

WHEREFORE, Plaintiff respectfully requests that this Court:

(a)      Order Grane to reinstate employment at the Facility to all those Union members who were not offered employment in December 2009.

(b)      Order Grane to pay such damages as are appropriate to the Union as well as to the employees, including, but not limited to, compensatory damages in an amount equal to the wages and benefits those employees who were not employed by Grane would have received had they  not been denied continuous employment after December 2009, and compensatory damages equivalent to the difference in value between the wages and benefits provided by the County pursuant to the MOU and those unilaterally implemented by Grane and provided to employees who were hired.

(c)      Order the County to enforce the APA and the Acknowledgment and Acceptance Agreement to which it is signatory against Grane and to which the Union, in its own right and in its representative capacity on behalf of the Union members/employees, is an intended third-party beneficiary.

(d)       Order Grane to enforce the APA and the Acknowledgment and Acceptance Agreement to which it is signatory against the County and to which the Union, in its own right and in its representative capacity on behalf of the Union members/employees, is an intended third-party beneficiary.

(e)      Grant such other and further relief as the Court may deem just and proper, including attorneys fees and costs incurred by the Union in order to enforce its rights as well the rights of its members rights which result from this  transaction between the County and Grane..

## DEMAND FOR JURY TRIAL

47.      A jury trial is demanded.


Respectfully Submitted,


/s/ Claudia Davidson
OFFICES OF CLAUDIA DAVIDSON
Claudia Davidson
Pa. I.D. No. 36020
Joseph D. Shaulis
Pa. I.D. No. 209261
500 Law and Finance Building
429 Fourth Avenue
Pittsburgh, PA 15219
(412) 391-7709
(412) 391-1190 (fax)
cdavidson@choiceonemail.com

Dated: